**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CITIZENS FOR RESPONSIBILITY
AND ETHICS IN WASHINGTON,
P.O. Box 14596
Washington, DC 20044,

PUBLIC CITIZEN
1600 20th Street NW
Washington, DC 20009,

and

PROJECT ON GOVERNMENT
OVERSIGHT,
1100 13th Street NW, Suite 800
Washington, DC 20005.

Plaintiffs,

v.

U.S. DEPARTMENT OF DEFENSE,
Office of the General Counsel
1600 Defense Pentagon
Washington, DC 20301,

PETE HEGSETH, in his official capacity as
U.S. Secretary of Defense,
Office of the General Counsel
1600 Defense Pentagon
Washington, DC 20301,

and

EMIL MICHAEL, in his official capacity as
Undersecretary of Defense for Research and
Engineering and Chief Technology Officer
of the U.S. Department of Defense,
Office of the General Counsel
1600 Defense Pentagon
Washington, DC 20301,

Defendants.

**<u>COMPLAINT</u>**

Civil Action No. 26-cv-3856

## INTRODUCTION

1. This lawsuit challenges the Department of Defense's illegal creation and utilization of a federal advisory committee—dubbed "Project Meridian: the Future of Warfare"—in violation of the Federal Advisory Committee Act ("FACA").

2. FACA requires that any federal advisory committee that includes non-governmental members be created by a charter, have a defined structure and purpose, make its records and meetings open to the public, and be fairly balanced in its membership. Congress enacted these requirements to "promote transparency, accountability, and open public participation 3in executive branch decisions and prevent informal advisory committees from exerting improper or one-sided influence" over federal policy. *VoteVets Action Fund v. U.S. Dep't of Veterans Affs.*, 992 F.3d 1097, 1101 (D.C. Cir. 2021).

3. In a September 30, 2026, memorandum to Department of Defense ("DoD") leadership, Secretary of Defense Pete Hegseth commissioned a new advisory committee called "Project Meridian: The Future of Warfare." *See* Exhibit 1. Secretary Hegseth tasked Project Meridian with "study[ing] the battlefields of the future, identify[ing] which weapons and technologies warfighters will need to harness to dominate in these environments, and propos[ing] actionable solutions to start developing, testing and fielding these capabilities such that America will have overmatch for the 21st century and beyond." *Id.*

4. Project Meridian is a prototypical advisory committee subject to FACA's requirements: It was created and is directed by DoD leadership and includes all manner of advisors from outside the government, including "top technologists, innovators, business leaders, policy makers, and national security experts." *Id.*

5. Project Meridian's broad remit implicates a panoply of public and private interests, from the safety of American citizens and servicemembers at home and abroad, to the global and domestic economy and availability of life-sustaining resources, to the dispensation of DoD's $1.5 trillion budget, to future considerations as to how the DoD should be structured and funded.

6. Project Meridian's work is already underway. It has held at least two meetings, and Secretary Hegseth has set a deadline of January 28, 2027, for its "finalized findings and recommendations." *Id.*

7. Despite its ongoing operations and imminent final report, Defendants have failed to comply with FACA's procedural and substantive requirements for new federal advisory committees, including FACA transparency requirements that disallow Project Meridian's closed-door operations.

8. Compounding the problem, Project Meridian's private-sector membership raises precisely the type of conflict-of-interest concerns that FACA was designed to address. Announced members include Elon Musk and Palmer Luckey, both leaders and stakeholders of major defense contractors with substantial financial interests in the outcome of Project Meridian's recommendations. Other members likewise have direct financial stakes in Project Meridian's findings or are dedicated to aggressive military action. Project Meridian's members include no countervailing voices to ensure its recommendations properly balance the public risks and costs associated with relying on artificial intelligence and other emerging technologies to drive military action.

9. As a FACA committee, Project Meridian cannot lawfully provide critical military advice to DoD without public participation and balanced membership to counteract the self-interest and biases of its private-sector members.

10. Plaintiffs are government watchdogs who seek to understand and inform the public about Project Meridian's creation and operations and an organization with expertise directly relevant to Project Meridian's mission and a point of view that is not represented by the Project's announced members. Each Plaintiff is directly harmed by Defendants' flouting of FACA's non-discretionary requirements.

11. The Court should therefore hold unlawful, vacate, and set aside Secretary Hegseth's September 30 memorandum establishing Project Meridian; enjoin Defendants from allowing Project Meridian to continue its work until Defendants bring it into compliance with FACA, including by publishing its charter and providing the required public access to its records and meetings; and enjoin Defendants from accepting or acting upon any recommendations by Project Meridian while it is acting outside the law.

**JURISDICTION AND VENUE**

12. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under FACA, 5 U.S.C. § 1001 *et seq.*, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 702.

13. Venue lies in this district pursuant to 28 U.S.C. § 1391(e) because Defendants are headquartered in the District of Columbia and a substantial part of the events giving rise to the FACA violations also occurred in the District of Columbia.

**PARTIES**

14. Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") is a non-partisan, non-profit government watchdog organization committed to protecting the rights of citizens to be informed about the activities of government officials and agencies, and to ensuring ethics, transparency, and integrity in government. To advance its mission, CREW uses a

combination of research, litigation, and advocacy. As part of its research, CREW routinely uses government records made available under FACA, the Freedom of Information Act ("FOIA"), and other federal laws, and widely disseminates those records to the public.

15. Plaintiff Public Citizen, Inc., is a non-profit, public-interest research, litigation, and advocacy organization based in Washington, D.C., with members and supporters in all 50 states. Public Citizen advocates before Congress, regulatory agencies, and the courts to advance the interests of its members on a wide range of consumer-protection issues. Since its founding in 1971, Public Citizen has worked to hold the government and corporations accountable to the people, including by focusing on research and advocacy with respect to regulation of health, safety, consumer finance, and the environment. Public Citizen frequently uses federal open-records laws to obtain information to form the basis for research or dissemination to the public. Among other topics, Public Citizen researches and advocates on issues related to Pentagon spending, procurement, and AI tools and weaponry. This work includes research and advocacy on the law and rules for deployment of AI-enabled weaponry, the threat of an AI weapons arms race, the risks of civilian casualties from reliance on AI weaponry, the overestimation of the likely efficacy of AI and high-tech weaponry, including the proposed Golden Dome, and the impact of AI and other Pentagon procurement decisions on other non-Pentagon spending options.

16. Plaintiff Project On Government Oversight ("POGO") is a non-partisan, non-profit organization based in Washington, DC. Founded in 1981, POGO was known as the Project on Military Procurement, and it went on to expose scandalous spending at the Pentagon, such as the $436 hammers and $7,600 coffee makers that have become emblematic of government waste. POGO expanded its mission in the early 1990s and now operates as an independent watchdog that investigates, exposes, and champions reforms on systemic corruption, abuse of power, and waste.

Since 2012, POGO has operated the Center for Defense Information, which advocates for the Pentagon to invest taxpayer dollars in technologies that are proven, effective, necessary, and that deliver value to the public. POGO has worked for years with champions from both sides of the aisle to monitor Pentagon procurement and acquisitions and identify opportunities for more accountable spending that delivers meaningful results for service members and taxpayers. POGO has also advocated against unsafe weapons and wasteful spending on ineffective new technologies at exorbitant cost.

17. POGO's institutional expertise includes that of William Hartung, who is a leading expert on the United States defense budget and the armament industry. Mr. Hartung specializes in proliferation, the economics of military spending, and alternative approaches to national security strategy. He has authored three books on defense contracting, and his articles are routinely published in national publications. Over the course of his decades-long career, Mr. Hartung has directed national defense policy projects at the Center for International Policy, the New America Foundation, and the World Policy Institute.

18. Defendant DoD is a federal agency within the meaning of FACA, 5 U.S.C. § 1001(3), and the APA, 5 U.S.C. § 551(1), that is headquartered in Virginia. As the federal agency that created Project Meridian, DoD has a nondiscretionary duty to ensure that Project Meridian complies with FACA.

19. Defendant Secretary Hegseth is sued in his official capacity as Secretary of Defense. As the head of DoD, Defendant Hegseth has a nondiscretionary duty to ensure that DoD complies with FACA.

20. Defendant Emil Michael is sued in his official capacity as Undersecretary of Defense for Research and Engineering and Chief Technology Officer of the U.S. Department of

Defense. As statutory chair of Project Meridian, Defendant Michael has a nondiscretionary duty to ensure that DoD complies with FACA with respect to Project Meridian.

**THE FEDERAL ADVISORY COMMITTEE ACT**

21. Congress enacted FACA in 1972 as a "sunshine law" to curb the Executive Branch's reliance on superfluous and secretive "advisory committees": ad hoc, non-federal bodies that counsel governmental decisionmakers on federal policy. Congress was particularly concerned that advisory committees "were often dominated by representatives of industry and other special interests seeking to advance their own agendas." *Cummock v. Gore*, 180 F.3d 282, 284 (D.C. Cir. 1999) (citing H.R. Rep. No. 92-1017 (1972), *reprinted in* 1972 U.S.C.C.A.N. 3491, 3496). To address those concerns, FACA establishes strict requirements for the creation and conduct of such committees that are designed to "promote transparency, accountability, and open public participation in executive branch decisions and prevent informal advisory committees from exerting improper or one-sided influence." *VoteVets Action Fund v. U.S. Dep't of Veterans Affs.*, 992 F.3d 1097, 1101 (D.C. Cir. 2021).

22. FACA authorizes the U.S. General Services Administration ("GSA") to "prescribe administrative guidelines and management controls applicable to advisory committees, and, to . . . provide advice, assistance, and guidance to advisory committees to improve their performance." 5 U.S.C. § 1006(c). GSA regulations governing the management of federal advisory committees are codified at 41 C.F.R. subpt. C, ch. 102, subch. A, pt. 102-3.

23. DoD has also promulgated guidance implementing the requirements of FACA and the GSA regulations for DoD-sponsored federal advisory committees. *See* DoD Instruction ("DoD-I") 5105.04, *Dep't of Defense Federal Advisory Committee Management Program* (Aug.

6, 2007). Among other things, DoD-I 5105.04 sets forth DoD's general policies on the management of DoD-sponsored federal advisory committees and provides procedures governing their formulation, operation, membership, and reporting. *Id.*

24. FACA defines an "advisory committee" as a "committee, board, commission, council, conference, panel, task force, or other similar group, or any subcommittee or other subgroup thereof . . . that is established or utilized to obtain advice or recommendations for the President or one or more agencies or officers of the Federal Government." 5 U.S.C. § 1001(2)(A). FACA excludes from the definition of "advisory committee" groups that are "composed wholly of full-time, or permanent part-time, officers or employees of the Federal Government." *Id.* § 1001(2)(b)(i).

25. An advisory committee subject to FACA can be "(i) established by statute or reorganization plan; (ii) established or utilized by the President; or (iii) established or utilized by one or more agencies." *Id.*

26. An advisory committee is established if it is "created by the federal government" and it is utilized if it is "subject to the federal government's 'actual management or control,' even if it is not created by the government." *VoteVets Action Fund*, 992 F.3d at 1103–04 (quoting *Wash. Legal Found. v. U.S. Sentencing Comm'n*, 17 F.3d 1446, 1450 (D.C. Cir. 1994)).

27. Consistent with FACA's goal of limiting the number of advisory committees "to the minimum necessary," 5 U.S.C. § 1002(b)(2), a new advisory committee may be established only if: (1) it is "specifically authorized by statute or by the President"; or (2) the head of an agency. 5 U.S.C. § 1008(a).

28. FACA permits the establishment of an advisory committee by an agency head only if such "establishment is . . . determined as a matter of formal record," after consulting with the

Administrator of the General Services Administration ("GSA") and publishing "timely notice . . . in the Federal Register, to be in the public interest in connection with the performance of duties imposed on that agency by law." *Id.*

29. Any advisory committee must also have, among other requirements, (i) "a clearly defined purpose"; (ii) a membership that is "fairly balanced in terms of the points of view represented and the functions to be performed by the advisory committee"; and (iii) "appropriate provisions to assure that the advice and recommendations of the advisory committee will not be inappropriately influenced by the appointing authority or by any special interest, but will instead be the result of the advisory committee's independent judgment." 5 U.S.C. §§ 1004(b)(1)-(3), (c); 41 C.F.R. §§ 102-3.60(a)(3), (b), 102-3.105(g).

30. To comply with these requirements, FACA's implementing regulations require the agency head to "first consult with the Secretariat [of GSA] and, as part of the consultation, provide a written public interest determination by the head of the agency" that the establishment of the advisory committee "is essential to the conduct of agency business" and that the information the agency seeks from the advisory committee "is not already available through another advisory committee or source within the Federal Government." 41 C.F.R. § 102-3.60(a).

31. The public interest determination that the agency head must provide must "demonstrate that establishing the committee is in the public interest" by including, "[a]t a minimum":

a. "Annual budget and expected costs, broken into: (i) Federal personnel . . . and other Federal internal costs; (ii) Proposed payments to members and number of members; and (iii) Reimbursable costs;

b. "If applicable, the total value of grants expected to be recommended during the fiscal year;

c. "Criteria for selecting members to ensure the committee has the necessary expertise and fairly balanced membership; [and a]

d. "List of all other Federal advisory committees of the agency[.]"

*Id.*

32. "To comply with [FACA's] requirement for fairly balanced membership," the implementing regulations direct agencies to "ensure that they fully consider and understand the potential implications or anticipated impacts of the advisory committee's potential recommendations[,]" including "the groups and entities potentially affected or interested in such recommendations . . . so that the agency can make informed decisions on the areas of expertise or perspectives that would advance the work of the advisory committee" *id.* § 102-3.60(b)(1), and, once the agency has "identified the points of view that would promote a fairly balanced advisory committee membership," "conduct broad outreach." *Id.* § 102-3.60(b)(2).

33. DoD guidance also requires that "Committee membership, as a whole, shall be balanced in terms of the points of view and the functions to be performed." DoD-I 5105.04 ¶ 4.6. "[T]o ensure that Committee members provide independent and balanced advice to the Federal government," the DoD requires that "[i]ndividual Committee members shall be free from significant conflicts of interest." *Id.* ¶ E3.5.1. Individual committee members must take several steps to safeguard against potential conflicts, including filing financial disclosure reports, *id.* ¶ E3.5.5.2, completing foreign activities questionnaires, *id.* ¶ E3.8.4, and complying with standards of ethical conduct, *id.* ¶ E3.8.1.

34. Once these predicate findings are made, an advisory committee created by an agency head remains prohibited from "meet[ing] or tak[ing] any action until an advisory committee charter has been filed" with "the head of the agency to whom the advisory committee reports" and the relevant Senate and House committees. *See* 5 U.S.C. § 1008(c).

35. The charter must contain the following information:

(A) the committee's official designation;
(B) the committee's objectives and the scope of its activity;
(C) the period of time necessary for the committee to carry out its purposes;
(D) the agency or official to whom the committee reports;
(E) the agency responsible for providing the necessary support for the committee;
(F) a description of the duties for which the committee is responsible, and, if the duties are not solely advisory, a specification of the authority for the duties;
(G) the estimated annual operating costs for the committee in dollars and person-years;
(H) the estimated number and frequency of committee meetings;
(I) the committee's termination date, if less than 2 years from the date of the committee's establishment; and
(J) the date the charter is filed.

5 U.S.C. § 1008(c)(2).

36. DoD guidance imposes additional requirements for the charters of DoD-sponsored federal advisory committees, including that their charters must "provide details on the selection process for Committee members and the Committee Chairperson, provide a description of the required expertise and/or represented groups necessary to achieve balanced membership, and list the Committee members' appointment categories . . . and whether or not they are compensated for their duties." DoD-I 5105.04 ¶ E3.A.2.3.

37. Once in operation, advisory committees must facilitate public comment and participation by keeping their meetings "open to the public" and publishing "timely notice of each meeting" in the Federal Register, 5 U.S.C. §§ 1009(a)(1)-(2), which GSA has interpreted to mean "at least 7 calendar days[']" notice, unless less notice is justified by documented and "exceptional circumstances," 41 C.F.R. § 102-3.150.

38. "Each advisory committee meeting shall be open to the public." 5 U.S.C. § 1009(a)(1). And within reason, interested members of the public must "be permitted to attend, appear before, or file statements with any advisory committee." *Id.* § 1009(a)(3). FACA permits

agencies to hold closed meetings or to otherwise not permit full public participation in limited circumstances prescribed by the Government in the Sunshine Act, 5 U.S.C. § 552b(c), but any such determination must "be in writing and shall contain the reasons for the determination." *Id.* § 1009(d).

39. In addition, FACA requires disclosure of "the records, reports, transcripts, minutes, appendixes, working papers, drafts, studies, agenda, [and] other documents . . . made available to or prepared for" the committee, subject to the exemptions of FOIA. 5 U.S.C. § 1009(b). To meet this obligation, affirmative publication of committee records is required. *See* 41 C.F.R. § 102-3.170 ("[A]gencies may not require members of the public or other interested parties to use FOIA procedures in order to obtain records available under sec. 10(b) of the Act.").

40. These materials must be released well before the relevant advisory committee meeting, so that the public can "follow the substance of the [committee's] discussions." *Food Chem. News v. Dep't of Health & Hum. Servs.*, 980 F.2d 1468, 1472 (D.C. Cir. 1992); *see also* 41 C.F.R. § 102-3.170 (requiring "contemporaneous availability of advisory committee records").

41. Advisory committees are also subject to federal records retention laws. "Official records generated by or for an advisory committee must be retained for the duration of the advisory committee." 41 C.F.R. § 102-3.175(e). And when the advisory committee terminates, those "records must be processed in accordance with the Federal Records Act . . . regulations issued by the National Archives and Records Administration . . . or in accordance with the Presidential Records Act." *Id.* When advisory committees are created to advise agencies, the Federal Records Act applies and the advisory committee's records are subject to requests under the Freedom of Information Act.

42. FACA requires that "[d]etailed minutes of each meeting of each advisory committee," containing specified information, "shall be kept." 5 U.S.C. § 1009(c).

43. FACA's transparency obligations extend to a subcommittee or working group of an advisory committee, which must also open its meetings and provide all records to the public if it "provides advice or recommendations directly to a Federal officer or agency, or if its advice or recommendations will be adopted by the parent advisory committee without further deliberations by the parent advisory committee." 41 C.F.R. § 102-3.145.

## FACTUAL ALLEGATIONS

***Defendants establish Project Meridian***

44. On September 30, 2026, Secretary Hegseth issued a memorandum commissioning Project Meridian ("September 30 Memorandum" or "the Memorandum"). *See* Exhibit 1. In the Memorandum, Secretary Hegseth touted the technological prowess of the DoD, which he refers to as the "Department of War," but stated that the DoD:

> must not take our current advantages for granted. We are witnessing rapid advances in artificial intelligence, autonomy, directed energy, robotics, biotechnology, among other critical high-tech areas. Combined, these new domains, new ways of fighting, and technological developments will profoundly alter the character of warfare. To maintain global dominance, the United States must anticipate future operational environments and act decisively to develop the tools to dominate them.

Exhibit 1.

45. Secretary Hegseth thus directed Defendant Michael, in his capacity as the DoD's Chief Technology Officer, to create and lead Project Meridian to "leverage critical perspectives from outside the Pentagon, drawing upon a group of top technologists, innovators, business leaders, policy makers, and national security experts." *Id.*

46. Secretary Hegseth ordered Project Meridian, "through a partner organization," to "study the battlefields of the future, identify which weapons and technologies warfighters will

need to harness to dominate in these environments, and propose actionable solutions to start developing, testing, and fielding these capabilities" and "to map the trajectory of future warfare, identify critical capability gaps, and propose actionable solutions in furtherance of the identified goals in the 2026 National Security Science and Technology Strategy." *Id.*

47. In the Memorandum, Secretary Hegseth also ordered that "Project Meridian's finalized findings and recommendations shall be submitted to [his] office no later than 120 days after this announcement, or on January 28, 2027." *Id.*

48. Also on September 30, 2026, Secretary Hegseth delivered a "State of the Force" address to assembled DoD personnel. During that speech, he publicly announced the creation of Project Meridian and its leadership. Specifically, Secretary Hegseth said,

> [u]nder the leadership of the Department's Chief Technology Officer, Emil Michael, Project Meridian will be co-led by three of our nation's best minds: Elon Musk, Palmer Luckey, and Newt Gingrich[.] . . . Those three great Americans are going to be joined by a team of senior leaders and subject matter experts from across our nation's unmatched innovation, academic, and policy ecosystems.[1]

49. During his speech, Secretary Hegseth further stated that Project Meridian's "purpose is to creatively look to the future and identify the domains we must conquer, and capabilities we must master . . . We need to be looking forward into the future to achieve technological and military dominance on the battlefield for decades to come. It is futuristic on purpose." *Id.* He further stated:

> Their work will be focused on discovering, developing, and fielding the weapons and systems that our children and our grandchildren will need in their lifetimes without any creative limitations or restrictions. On any battlefield, from under the Earth to beyond the moon, our American warriors will be armed with absolute technological superiority because we had the foresight to prepare today for tomorrow.

[1] DOD, Secretary of War Pete Hegseth's State of the Force Address (As Delivered) (Sept. 30, 2026), https://perma.cc/KA6L-94F2; *see also* Press Release, DOD, Secretary Hegseth Announces Six Major Initiatives at Quantico Speech (Sept. 30, 2026), https://perma.cc/W33C-95WX.

*Id.*

50. Secretary Hegseth concluded by announcing that "our first meeting with those three great Americans [Gingrich, Musk, and Luckey] and a small group of us is happening in a SCIF [Sensitive Compartmented Information Facility] about two hundred yards away right after this speech. We are going to hit the ground running. And in that time, Project Meridian will ruthlessly map the trajectory of war's domains and technologies to ensure this War Department, your War Department, dominates the future." *Id.*

51. Project Meridian met on September 30 as described by Secretary Hegseth in his speech.[2] Photographs of that meeting posted on the DoD's X page show that Secretary Hegseth and Defendant Michael attended the September 30 meeting in person.




[2] Department of War (@DeptofWar), X (Oct. 1, 2026, 6:38 pm), https://perma.cc/7MGD-7ANE.



52. October 1, Project Meridian held its second meeting. *Id.* Photographs posted by the DoD to its X account show that the meeting was attended by Secretary Hegseth, Luckey, Gingrich, and Senators Tom Cotton and Tim Sheehy.






53. On or before October 1, Defendant "Hegseth [had] asked [Senator] Tim Sheehy and [Senator Tom Cotton] to be representatives on Project Meridian."[3]

54. On October 2, the MITRE Corporation (MITRE) issued a press release announcing that it was "commissioned [by the DoD] to lead Project Meridian, an independent initiative on the future of warfare."[4] MITRE is a private nonprofit organization. It contracts with the federal government to operate a number of federally funded research and development centers (FFRDCs) and has received $22.9 billion in federal funds since 2008. FFRDCs are contractor-operated research centers that use federal funding to engage in research and development to support the missions of certain federal agencies. The establishment, use, review, and termination of FFRDCs is governed by the Federal Acquisition Regulation (FAR). *See* FAR § 35.017.

55. The DoD's reliance on a government contractor to assist in the operation of Project Meridian is consistent with DoD guidance on the management of DoD-sponsored federal advisory

[3] Tom Cotton (@SenTomCotton), X, (Oct. 5, 2026, 12:55 pm), https://perma.cc/6LBA-NV3V.
[4] MITRE, *Project Meridian* (Oct. 2, 2026), https://perma.cc/R54J-BRVB.

committees. The DoD guidance makes clear that the DoD "does not fund manpower authorizations for DoD-Supported Federal Advisory Committees" and instead "normally assists the Committee by hiring . . . consultants [or] contracting for external contractors[.]" DoD-I 5105.04 ¶ E3.6.1.

56. MITRE's press release confirmed that Gingrich, Musk, and Luckey were serving as "Co-Directors" of Project Meridian and named 17 additional "Participants." Those 17 participants include both federal employees and persons who are not full-time—or permanent part-time—officers or employees of the federal government. On October 2, the DoD announced that the National Security and Engineering Center, an FFRDC operated by MITRE, would "manage and direct" Project Meridian and author an "unclassified final report, not to exceed 30 pages, with classified annex(es) at the conclusion of the 120-day project period."[5]

***Defendants fail to comply with FACA's non-discretionary requirements***

57. Defendants created and launched Project Meridian without first publishing notice of its creation in the Federal Register or filing a committee charter.

58. Defendants have also barred public participation in Project Meridian, in violation of FACA. Defendants have failed to publish notice of any Project Meridian meeting in the Federal Register, failed to publish or otherwise make available its records or detailed minutes of each meeting, failed to allow public attendance at or participation in any Project Meridian meeting, and failed to provide any written justification for holding closed meetings as required by federal law. Nor is there any indication that Project Meridian is retaining records of its work. By its terms, the Memorandum contemplates the public release of only partial information about Project Meridian's

[5] DoD Chief Technology Office (@DoWCTO), X (Oct. 2, 2026 11:56 am), https://perma.cc/U2PB-LPP9.

recommendations, and only after its work is complete on January 28, 2027.

59. On information and belief, Defendants created and launched Project Meridian without consulting with the Administrator of the GSA regarding whether creating the committee is "in the public interest in connection with the performance of duties imposed on that agency by law," as required by FACA and applicable regulations.

52. On information and belief, Defendants created and launched Project Meridian without providing GSA with a written public interest determination, as required by FACA and applicable regulations.

53. On information and belief, Defendants created and launched Project Meridian without otherwise establishing as a matter of formal record that Project Meridian is in the public interest in connection with the performance of duties imposed on the DoD by law, as required by FACA.

54. The DoD is already utilizing federal advisory committees to address the same issues assigned to Project Meridian by the DoD. On February 25, 2026, the DoD established the Science, Technology, and Innovation Board ("STIB") by merging two other DoD federal advisory committees.[6] The charter of the STIB provides that it "shall focus on matters concerning science, technology, innovation, manufacturing, acquisition processes, and other topics of special interest to the [DoD]." *Id.* at 5.

55. The STIB was chartered pursuant to FACA, 5 U.S.C. § 1008(a)(2), and the agency published its intent to charter the committee in the Federal Register. Establishment of Department of War Federal Advisory Committee-Science, Technical, and Innovation Board, 91 Fed. Reg. 7978

[6] James D. Freeman, II, Mem. for Comm. Mgmt. Secretariat, Gen. Servs. Admin., Off. of the Dir. of Admin. & Mgmt, DOD (Feb. 25, 2026), https://perma.cc/6UQN-QPUF.

(Feb. 19, 2026).

56. In its public notice, the DoD noted it was "unaware of any U.S. government or non-government entity that could provide the same level of national security [science and technology] enterprise expertise necessary 'to ensure the American military remains the most lethal and dominant on the planet, not merely for a few years, but for decades and generations to come.'" *Id.* at 7979 (quoting Donald J. Trump, President, United States, Remarks to the Department of Defense in Quantico, Virginia (Sept. 30, 2025), https://tinyurl.com/334abuhj).

57. On information and belief, Defendants created and launched Project Meridian without establishing as a matter of formal record whether the information to be obtained from Project Meridian would be available from an existing federal advisory committee, such as the STIB, as required by FACA and applicable regulations.

58. On information and belief, Defendants have not taken the necessary steps to ensure that the advice and recommendations of Project Meridian will not be inappropriately influenced by the DoD or any special interest, as required by FACA. For example, the Memorandum does not contain any conflict-of-interest provisions or provisions to ensure Project Meridian's independence or integrity.

59. On information and belief, Defendants have not taken any of the steps required by FACA, GSA's implementing regulations, or DoD's implementing instructions to ensure that the committee is fairly balanced. Among their failings, Defendants did not provide GSA with Project Meridian's criteria for selecting members, adequately consider the impact or implications of Project Meridian's potential recommendations, adequately consider the groups or entities potentially affected or interested in Project Meridian's recommendations, or conduct broad outreach for members. On information and belief, and in light of the short window of time between DoD's formal

creation of Project Meridian on September 30 and the first meeting of Project Meridian later that same day, the DoD did not follow its own committee member selection and appointment process to ensure the independence and fair balance of the committee. *See* DoD-I 5105.04 ¶ E3.5.

60. These failings have caused Project Meridian to have an impermissibly self-interested and unbalanced membership, in violation of FACA.

61. Project Meridian's membership, and particularly its membership with purported technical expertise, is dominated by individuals who have enormous financial interests in the proliferation and deployment of the technologically advanced military assets about which Project Meridian will advise the DoD. Its members are also materially invested in staying in the DoD's good graces so that they continue to receive funding from the agency.

62. Nineteen of the twenty-one members of Project Meridian work in the private sector. Many of those members have significant financial interests in the findings and recommendations made by the committee. The members include:

a. Elon Musk: Musk is the wealthiest person in the world and the founder, CEO, and largest shareholder of SpaceX. SpaceX holds approximately $8 billion in DoD contracts, including a $4.16 billion contract for satellite threat-tracking systems[7] and a $2.29 billion contract for development of a military satellite communication network.[8] Musk is also the CEO of xAI, a subsidiary of Space X, which holds a DoD contract of worth up to $200 million for artificial intelligence products and services.[9]

b. Palmer Luckey: Luckey is the co-founder and CEO of Anduril, a defense technology and artificial intelligence company. Anduril has been awarded approximately $25 billion in contracts by the DoD, including for developing unmanned drones and battlefield software for the Army, building

[7] Cristina Stassis, *SpaceX Awarded $4 Billion Space Force Contract to Track Airborne Threats*, Military Times (May 29, 2026), https://perma.cc/BV4H-KMDE.

[8] Mike Stone, *US Space Force Awards SpaceX $2.29 Billion Contract For Military Space Data Network*, Reuters (May 26, 2026), https://perma.cc/SNR4-ZDAY.

[9] David Ingram & Ben Goggin, *Musk's xAI was a Late Addition to the Pentagon's Set of $200 Million AI Contracts, Former Defense Employee Says*, NBC News (Jul. 22, 2025), https://tinyurl.com/52pm5n36.

government facilities for the Navy, developing semi-autonomous aircraft for the Air Force, and supplying air defense and offensive systems.[10]

c. Safra Katz: Katz is the Executive Vice Chair of the Board of the Oracle Corporation, a technology company focused on cloud computing infrastructure and artificial intelligence applications, and she was its CEO from 2014 to 2025. Since 2011, Oracle has received $806.19 million in taxpayer funds through the DoD, including $53.40 million in 2026.[11] In July 2026, Oracle secured an enterprise software contract with the DoD for up to $7 billion over 10 years.[12]

d. Dino Mavrookas: Mavrookas is the CEO of the autonomous shipbuilding company Saronic Technologies. In February 2026, Saronic received a $392 million contract with the DoD—through the Department of the Navy ("Navy")—for "autonomous surface vessels," or unmanned warships.[13]

e. Chris Power: Power is the CEO of Hadrian Automation, an automated manufacturing company created in 2022. In 2026, Hadrian secured a $900 million contract from the DoD, through the Navy, to manufacture components and systems for submarines. It also secured a $39.2 million contract with a potential value of $80 million from the DoD, through the Army, to build a manufacturing facility in Texas "aimed at modernizing the production capability of components for weapons systems."[14]

f. Phil Root: Root is the Chief Technology Officer of GRVTY, a defense

---

[10] *Anduril Industries Awarded Air Defense Production Contract with Department of Defense*, Anduril Indus. (Oct. 8, 2024), https://perma.cc/D8MF-DULN; Harrison Miller, *Anduril Wins $4.7 Billion In Defense Contracts After Luckey Takes Key Role*, Inv. Bus. Daily (Oct. 6, 2026), https://perma.cc/6F7F-YP9Y; *Anduril Continues to Scale Next-Generation Command and Control Across the Army,* Anduril Indus. (Oct. 5, 2026), https://perma.cc/Y2WQ-QPM5; Mark Shushnar, *Anduril Wins Production Contract for U.S. Air Force CCA Program*, Anduril Indus. (Jun. 17, 2026), https://perma.cc/MM7N-5LAQ; DOD, *Contracts for March 13, 2026* (Mar. 13, 2026), https://perma.cc/6XNG-9SUS; *Anduril Awarded $23.9 Million Contract for U.S. Marine Corps Organic Precision Fires-Light Program*, Anduril Indus. (Jan. 15, 2026), https://perma.cc/MNB6-DLBY.

[11] *Oracle America, Inc.*, USASpending, https://perma.cc/EK2Q-FZBD.

[12] Rachel S. Cohen, *DoD Awards Oracle Software Deal Worth Up to $7 Billion*, Fed. News Network (Jul. 24, 2026), https://tinyurl.com/4b9z8fpv.

[13] Vignish R, *Saronic lands $392M Navy contract for autonomous surface vessels*, Tech Funding News (Feb. 26, 2026), https://tinyurl.com/ypwtb4sj.

[14] Lauren C. Williams, *Navy bets $900M on automated factories to boost submarine production*, Def. One (Mar. 20, 2026), https://tinyurl.com/49er5z44; U.S. Army Pub. Affs., *Army Accelerates Advanced Manufacturing With Contracting Award at Red River*, U.S. Army (Mar. 18, 2026), https://tinyurl.com/3cxhu9fw.

technology company that focuses, according to its website, on "Space Electronic Warfare, Directed Energy, Maritime Autonomy, and Cyber Effects."[15] In October 2026, GRVTY secured $125 million in classified prime contracts from the federal government.[16] In March 2026, GRVTY secured a $75 contract with the Navy for "advanced analytics, software, and operational prototypes."[17]

g. Peggy Johnson: Johnson is the CEO of the humanoid robotics company Agility Robotics, which secured a DoD purchase order from the DoD, — through the Naval Research Laboratory, for "bipedal humanoid robots for interaction."[18]

h. Rick Smith: Smith is the CEO of Axon Tech, a defense and law enforcement technology company that has been awarded a $510.6 million contract by the federal government for body-worn camera and taser products, including a $6.6 million contract from the DoD.[19]

i. Bob Smith: Smith is on the board of Parsons Corporation, a defense company that has been awarded billions of dollars by the DoD to "deliver integrated, mission-critical solutions across air, land, sea, space, and cyber domains."[20] Smith is also on the board of Merlin, Inc. a defense company that was awarded a $105 million contract by the DoD, through the Special Operations Command.[21] He is a former executive of DoD contractors Honeywell Aerospace and Blue Origin.

j. Joshua Steinman: Steinman is the co-founder and CEO of Galvanick, an industrial cybersecurity firm. In January 2026, Galvanick was selected for a prime indefinite delivery, indefinite quantity contract under the DoD's Missile Defense SHIELD contract.[22]

---

[15] *Purpose and Values*, GRVTY, https://perma.cc/8S4Z-MKWA.

[16] *GRVTY Secures $125 Million in Classified Prime Contracts in Q3 2026*, GRVTY, https://perma.cc/94PD-3J3K.

[17] *GRVTY Awarded $75 Million to Deliver Rapid C5ISR Innovation for the U.S. Navy*, GRVTY, https://perma.cc/8M6B-6EJ7.

[18] Yan Gu, *Humanoid Robot Gets Its Sea Legs*, LinkedIn (June 26, 2026) https://perma.cc/SCD3-ENXK; *Contract Summary PIID N0017324P2400*, USASpending, https://tinyurl.com/bykzew3b.

[19] *Axon Enterprise, Inc.*, USASpending, https://perma.cc/KX6H-NCDK; *Search Results (DOD; Axon Enterprise, Inc.)*, USASpending, https://perma.cc/EZ95-YBSJ.

[20] *National Security,* Parsons, https://tinyurl.com/mvdvdhax; *Parsons Corporation*, USASpending, https://perma.cc/MUV4-MVAL.

[21] *Merlin Awarded $105M Production Contract for USSOCOM Fixed-Wing Autonomy*, Business Wire (Jun. 11, 2024), https://tinyurl.com/mrt6djhc.

[22] Joshua Steinman, *Big news today*, LinkedIn (Jan. 20, 2026) https://perma.cc/67RT-CNSW.

k. Kevin Weil: Weil is on the board of aerospace company Stoke Space, which in 2025 was selected by the DoD, through the United States Space Force, to participate in the DoD's National Security Space Launch Phase 3 Lane 1 program, making Stoke eligible to compete for $5.6 billion in DoD contracts.[23] Stoke has been paid $5.58 million by the DoD to date.[24] Weil is also on the board of Cisco Systems, which has received billions of dollars in contracts from the DoD and which describes the mission of its "federal government solutions" business as to "Protect all that matters for the Department of War."[25]

l. Dan Patt: Patt works for Systems, Technology and Research LLC ("STR"), for Thomas H. Lee Parters ("THL"). STR is a national security science and technology company that has been awarded $1.1 billion in DoD contracts in the last 15 years. THL is a private equity firm that owns 170 companies across the automation, services, healthcare, and technology sectors. Patt is also a Senior Fellow at the Hudson Institute, a conservative think tank that is partially funded by Amazon, AT&T, CSG Government Solutions, Google, Lockheed Martin Corporation, Palantir Technologies Inc., Qualcomm, BAE Systems Inc., Ericsson, Hitachi, META, Saronic Technologies, Waterman, Blacksea Technologies, Chevron, Forterra, Johnson & Johnson, and L3Harris Technologies, which collectively have been awarded tens of billions of dollars in contracts from the DoD.

m. Joe Lonsdale: Lonsdale is the founder and Managing Partner of 8VC, a venture capital firm whose portfolio includes artificial intelligence and defense companies that have received government contracts, including Palantir, Anduril, and Chaos Industries.[26] Lonsdale is also a co-founder and board member of Epirus, a defense technology company that in August 2026 announced that it had been awarded an $11 million DoD contract, through the United States Marine Corps.[27] Lonsdale is also a co-founder of Palantir, which has secured billions of dollars in DoD Contracts, including one contract with the Army that is worth up to $10 billion over the next decade.[28]

---

[23] Press Release, Stoke, *Stoke Space Selected for the U.S. Space Force's $5.6B NSSL Program* (Mar. 28, 2025), https://tinyurl.com/ypekj5uy.

[24] *Stoke Space Technologies, Inc.*, USASpending, https://tinyurl.com/49eh9kfz.

[25] *Cisco Systems Inc*, USASpending, https://perma.cc/XN4L-FUDH; *Solutions for Federal Government*, Cisco, https://perma.cc/NM24-MAD2.

[26] https://8vc.com/companies?industry=Government+%26+Defense%2CAI.

[27] Press Release, Epirus, *U.S. Marine Corps Awards Epirus $11 Million Contract for HAVOC Program* (Aug. 10, 2026), https://tinyurl.com/2pcf9c5f.

[28] *Profile: Joe Lonsdale*, Forbes, https://www.forbes.com/profile/joe-lonsdale/; *Palantir Technologies, Inc.*, USASpending, https://tinyurl.com/4ysvkrxy; *Palantir USG Inc*,

n. Kaj Larsen: Larsen is former Navy Seal and a self-described "Entrepreneur, Investor, Founder, and National Security Leader."[29] Larsen is the Head of Military Investing and Communications at Siebert Financial, a brokerage and wealth management firm.[30] He is also on the board of the Defense Entrepreneurs Forum, where he describes his role as "a strategic advisor at the intersection of national security and technology."[31]

o. John Herring: Herring is the co-founder and Executive Director of Lookout, a global cybersecurity company that promotes its work with DoD and previously received at least $1.8 million in DoD funds.[32] Herring is also the co-founder of Vy Capital, a venture capital firm that invests in defense contractors and has financial ties to Elon Musk.[33]

63. Each of these members brings to Project Meridian a profit-driven approach to national defense and technological integration that relies on the continuation and expansion of opportunities for their companies and clients to profit from the operations of the DoD as its operations become more advanced. And each of these members has an ongoing interest in not only expanding their own opportunities for federal funding, but in issuing a report and recommendation to Secretary Hegseth that maximizes the DoD's influence and operations and that supports Secretary Hegseth's aggressive public statements regarding the dominance of the American military.

64. No members of Project Meridian provide a meaningful counterweight to the biases

---

USASpending, https://tinyurl.com/437afucb; Samantha Subin, *Palantir Lands $10 Billion Army Software and Data Contract*, CNBC (Aug. 1, 2025), https://tinyurl.com/2zdrc34e.

[29] Kaj Larsen, LinkedIn, https://www.linkedin.com/in/kaj-larsen-5818675/.

[30] *Id.*

[31] *Kaj Larsen Bio*, Kaj Larsen, https://perma.cc/DB7D-W3DS.

[32] *John Hering*, Science, Technology and Innovation Board, https://stib.cto.mil/stib-bio_hering/; *Lookout, Inc.*, USASpending, https://perma.cc/949N-C2N5.

[33] *Vy Capital Investments*, Pitchbook, https://tinyurl.com/3m5y7w76; *Neros, Inc.*, USASpending, https://perma.cc/L4N6-VTWR; Soren Monroe-Anderson, *Neros Raises $35M Series A to Accelerate American Drone Manufacturing*, Medium (Mar. 17, 2025), https://tinyurl.com/bdd7hdrr.

and profit-driven view of Project Meridian's current non-government employee members.

65. Project Meridian has only two government employees as members: Victoria Coleman, the Chief Scientist for the United States Air Force, and Defendant Michael, whom Secretary Hegseth appointed to lead Project Meridian.

66. Both Coleman and Michael, as high-ranking employees of the DoD, report to Secretary Hegseth. On information and belief, they have been involved in the procurement and execution of billions of dollars in contract and grant awards that have flowed to the members of Project Meridian or their companies.

67. The only four civilian members of Project Meridian without financial interests in the outcome of Project Meridian—Retired Army General James Rainey, Retired Marine Colonel Frances "Bing" West, Nadia Schadlow, and Gingrich—do not provide fair balance.

68. General Rainey and Colonel West are military officers with many years of service. General Rainey concluded the last three years of his career as the commanding officer of the United States Army Futures Command, which was tasked with modernizing the Army by working with the same contractors and grantees already represented on Project Meridian. Colonel West has similarly built his military and civilian career on his expertise in military operations and counterinsurgencies.

69. Schadlow is a former DoD employee who served on the DoD's Defense Policy Board, another federal advisory committee created by the DoD, and was "the architect of the 2017 National Security Strategy" for President Trump's first administration, where she was appointed Deputy National Security Advisor for Strategy and Assistant to President Trump.[34] She is currently

[34] *Nadia Schadlow*, Hoover Institution, https://tinyurl.com/yeynfs76.

a Senior Fellow at the Hudson Institute, which has received $14.3 million from the DoD.[35]

70. Gingrich is the former Speaker of the House and Republican House Conference Leader and sought the Republican nomination to the Presidency in 2012. He left public service in 1999. Gingrich has maintained close ties to President Trump, falsely claimed that the 2020 presidential election was stolen, and advised President Trump to encourage Republican-controlled legislatures to thwart the certification of the election.[36] President Trump appointed Gingrich's wife United States Ambassador to the Holy See in 2017 and appointed her United States Ambassador to Switzerland and Liechtenstein in October 2025.

71. On October 29, 2026, POGO transmitted a written request to the DoD that it appoint Mr. Hartung, as a representative of POGO, to be a member of Project Meridian. That request explained Mr. Hartung's expertise in the subject matter of Project Meridian and why his and POGO's perspective were not represented. As of the date of this filing, POGO received no response.

72. Given Project Meridian's purpose to "map the trajectory of future warfare," the views of its members do not approach fair balance.

73. Among other things, Project Meridian has no meaningful representation from any person or entity with a record of advocating for restraint in the proliferation and use of military assets; that specializes in minimizing human rights abuses and harm to civilian populations and resources or addressing the fallout from them; that specializes in identifying and addressing the ethical constraints that may limit the development and use of artificial intelligence and other

[35] *Search Results (Hudson Institute; C6E3PJFLXJW8)*, USASPending, (last visited Oct. 30, 2026), https://perma.cc/682T-TTCY.

[36] *Final Report of the U.S. House Select Committee to Investigate the January 6th Attack on the United States Capitol*, H. Rep. 117-663, 117th Cong., 2d Sess., at 268, (Dec. 22, 2022), https://tinyurl.com/3ux8c2zy.

autonomous mechanisms for national defense; that operates or represents those that operate as civilians in theatres of war and military conflict whose safety and interests might be impacted by the future conduct of the DoD as recommended by Project Meridian; that has expertise in the development and administration of the DoD budget; that has expertise in government ethics; or that has expertise in international law.

***Injuries to Plaintiffs***

74. Each of the Plaintiffs has a statutory right and particularized interest in obtaining information regarding Project Meridian that FACA requires to be public, including the DoD's prior notice of the creation of and public interest justification for the creation of Project Meridian, Project Meridian's charter, prior notice of its meetings, an opportunity to participate in or observe those meetings, and access to the materials relied on and generated by Project Meridian. By failing to lawfully establish and operate Project Meridian in accordance with FACA, Defendants are depriving Plaintiffs of those statutory rights.

75. Defendants' conduct injures each Plaintiff by depriving them of information regarding the genesis, purpose, function, governance, and public interest protections of Project Meridian and the opportunity to meaningfully participate in it as either a member of Project Meridian or as a member of the public.

76. CREW and Public Citizen have specifically requested records about Project Meridian required by FACA from Defendants, and Defendants have not responded to those requests to date.

77. Because of Defendants' deprivation of statutorily required information, CREW is unable to inform the public about any aspect of Project Meridian's activities except what Defendants choose to release and is unable to ascertain and attempt to address lapses in its ethics

and integrity. Defendants' deprivation of information also prevents Public Citizen from understanding the likely impact that Project Meridian's work will have on the health, safety, environmental, and national defense and AI utilization issues about which it advocates or how it might ensure that those issues are responsibly addressed by Project Meridian. And Defendants' deprivation of information prevents POGO from understanding whether and how Project Meridian is ensuring that its work and recommendations are guided by the national interest and a responsible approach to both the economics of national defense and the DoD's interactions with and reliance on contractors, or from planning how it might ensure that the impact of Project Meridian's recommendations, if unsound, might be mitigated.

78. POGO is also injured by Defendants' failure to ensure that Project Meridian has fairly balanced membership, which would necessarily include financially disinterested members with expertise in proliferation, the economics of military spending, alternative approaches to national security strategy, and mitigating the risks associated with an overreliance on contractors in national defense. By excluding members with sufficient expertise on these issues, the advocacy and implementation of which are central to POGO's mission, Defendants have ensured that they will not be adequately addressed or incorporated into Project Meridian's work and findings. POGO specifically requested to be included among Project Meridian's members, and Defendants have ignored that request. By taking these actions, Defendants have deprived POGO of its statutory right under FACA to a fairly balanced committee.

## CLAIMS FOR RELIEF

### COUNT I
### APA, 5 U.S.C. § 706
### Violation of FACA: Unlawful Establishment and Utilization of a Federal Advisory Committee

79. Plaintiffs re-allege and incorporate by reference the foregoing paragraphs as if fully set forth herein.

80. Project Meridian is an advisory committee within the meaning of FACA because it is "a committee, board, commission, council, conference, panel, task force, or other similar group" that has been "established or utilized to obtain advice or recommendations for the President or one or more agencies or officers of the Federal Government." 5 U.S.C. § 1001(2)(A). FACA permits the establishment of an advisory committee by an agency head only if such "establishment is . . . determined as a matter of formal record," after consulting with the Administrator of GSA and with "timely notice . . . in the Federal Register, to be in the public interest in connection with the performance of duties imposed on that agency by law." 5 U.S.C. § 1008(a).

81. Defendants have failed to comply with the above requirements of FACA.

82. In particular, Defendants have failed, on information and belief, to consult with the Administrator of GSA to "determine[] as a matter of formal record, . . . with timely notice published in the Federal Register" why Project Meridian is "in the public interest in connection with the performance of duties imposed on that agency by law," 5 U.S.C. § 1008(a)(2), and failed to determine whether Project Meridian's functions "could be performed by one or more agencies or by an advisory committee already in existence," 5 U.S.C. §§ 1004(b), (c).

83. Defendants have also failed to ensure that Project Meridian has (i) a membership that is "fairly balanced in terms of the points of view represented and the functions to be performed by the advisory committee"; and (ii) "appropriate provisions to assure that the advice and

recommendations of the advisory committee will not be inappropriately influenced by the appointing authority or by any special interest, but will instead be the result of the advisory committee's independent judgment." 5 U.S.C. §§ 1004(b)(1)-(3), (c).

84. Defendants have also failed to file a charter for Project Meridian, 5 U.S.C. § 1008(c), despite the fact that Defendant Hegseth has already established Project Meridian, announced its leadership, and mandated that its work be completed by January 28, 2027.

85. The DoD's establishment of Project Meridian failed to comply with the procedural and substantive requirements of FACA, its implementing regulations, and the DoD's own guidance governing the creation and management of DoD-sponsored federal advisory committees. Accordingly, Defendants' establishment and utilization of Project Meridian was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), and "without observance of procedure required by law," *id.* § 706(2)(D).

86. Defendants' failure to make public its prerequisite findings and determinations regarding Project Meridian, or to file a charter, also constitutes agency action that was "unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), "or otherwise not in accordance with law," *id.* § 706(2).

87. Defendants' establishment and utilization of Project Meridian is "final agency action for which there is no other adequate remedy in a court," *id.* § 704, and Plaintiffs are "entitled to judicial review," of those FACA violations under the APA, *id.* § 702.

**COUNT II**
**APA, 5 U.S.C. § 706**
**Violation of FACA: Failure to Make Project Meridian's Records Publicly Available**

88. Plaintiffs re-allege and incorporate by reference the foregoing paragraphs as if fully set forth herein.

89. FACA requires that "the records, reports, transcripts, minutes, appendixes, working papers, drafts, studies, agenda, or other documents which were made available to or prepared for or by each advisory committee shall be available for public inspection and copying at a single location in the offices of the advisory committee or the agency to which the advisory committee reports until the advisory committee ceases to exist." 5 U.S.C. § 1009(b).

90. Federal regulations also require that "[o]fficial records generated by or for an advisory committee [] be retained for the duration of the advisory committee" and that at the termination of the advisory committee, those "records must be processed in accordance with the Federal Records Act . . . regulations issued by the National Archives and Records Administration . . . or in accordance with the Presidential Records Act." *Id.*

91. DoD guidance further provides that committee records "shall be maintained and preserved pursuant to" the DoD's official records management program, DoD-I 5105.04 ¶ E3.14.1, and that "any records, reports, transcripts, minutes, appendices, working papers, drafts, studies, agendas, or other documents that were made available to or prepared for or by a Committee shall be available for public inspection and copying at a single location until the Committee ceases to exist." *Id.* ¶ E3.14.1.2.

92. Because Project Meridian is a federal advisory committee within the meaning of FACA, its records must be made available for public access as FACA requires, and they must be retained and processed in accordance with the Federal Records Act.

93. Plaintiffs CREW and Public Citizen have requested that Defendants make available for public access and preserve Project Meridian's records as required by law.

94. Defendants have failed to respond to CREW's and Public Citizen's requests to date, have failed to make any of Project Meridian's records publicly available, and have provided no assurances that Project Meridian's records are being preserved as required by law.

95. Defendants' failure to disclose and maintain these records in violation of FACA, its implementing regulations, and the DoD's own guidance, is an agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* § 706(2).

96. Plaintiffs have "no other adequate remedy in a court," *id.* § 704, and are therefore "entitled to judicial review" of this FACA violation under the APA, *id.* § 702.

**COUNT III**
**APA, 5 U.S.C. § 706**
**Violation of FACA: Failure to Provide Notice and Public Access to Project Meridian's Meetings**

90. Plaintiffs re-allege and incorporate by reference the foregoing paragraphs as if fully set forth herein.

91. FACA requires advisory committees to publish "timely notice of each meeting" in the Federal Register, 5 U.S.C. § 1009(a)(2), which GSA has interpreted to mean "at least 7 calendar days" notice, unless less notice is justified by documented and "exceptional circumstances," 41 C.F.R. § 102-3.150.

92. FACA requires that "[e]ach advisory committee meeting shall be open to the public" and that "[i]nterested persons shall be permitted to attend, appear before, or file statements with any advisory committee, subject to such reasonable rules or regulations as the Administrator [of the General Services Administration] may prescribe." 5 U.S.C. §§ 1009(a)(1), (3). FACA permits such meetings to be closed or for an advisory committee to restrict public participation in limited circumstances and only when the determination to limit public access or participation is made in writing that contains the reasons for the determinations." *Id.* § 1009(d).

93. DoD guidance similarly requires that "[a]ll Committee meetings, to the extent possible, shall be open to the public," DoD-I 5105.04 ¶ E3.12.4, and that closed meetings may be held only upon a written request to the appropriate DoD sponsoring official, provided that the request is "submitted in a timely manner to ensure the Committee complies with the 15-calendar day requirement for the Federal Register meeting notice," as provided in FACA regulations, *id.* ¶ E3.12.3.2.

94. Project Meridian has held at least two meetings.

95. Defendants have failed to make the required public notice of any of Project Meridian's meetings.

96. Defendants have failed to make Project Meridian meetings open to the public or to permit interested persons to attend, appear before, or file statements with Project Meridian. Defendants have failed to provide the required written justification for holding closed meetings or otherwise limiting public participation in them.

97. Defendants' violation of these provisions is an agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* § 706(2).

98. Plaintiffs have "no other adequate remedy in a court," *id.* § 704, and are therefore "entitled to judicial review" of this FACA violation under the APA, *id.* § 702.

**COUNT IV**
**APA, 5 U.S.C. § 706**
**Violation of FACA: Failure to Make Project Meridian Fairly Balanced**

99. Plaintiffs re-allege and incorporate by reference the foregoing paragraphs as if fully set forth therein.

100. FACA, its implementing regulations, and the DoD's own guidance require that all advisory committees must be "fairly balanced in terms of the points of view represented and the

functions to be performed by the advisory committee." 5 U.S.C. § 1004(b)(2); *accord* 41 C.F.R. § 102-3.60; DoD-I 5105.04 ¶ 4.6.

101. Project Meridian is not fairly balanced because it excludes the perspectives of many people and organizations, including Plaintiff POGO or others, whose perspectives are meaningfully different from those of the committee members and who have direct expertise or interests in Project Meridian's stated mission and the DoD's implementation of Project Meridian's recommendations.

102. Defendants did not conduct the broad public outreach for members of Project Meridian as described in 41 C.F.R. § 102-3.60(a), did not establish as part of a written public interest determination required by FACA the criteria for selecting members of Project Meridian to ensure the committee has the necessary expertise and fairly balanced membership, and have not provided the public with any opportunity to apply for membership to Project Meridian. POGO nonetheless requested representation on Project Meridian to no avail.

103. POGO is directly injured by its lack of representation on Project Meridian and its inability to influence its recommendations on equal terms with Project Meridian's members.

104. Defendants' establishment and utilization of Project Meridian without the fairly balanced membership required by FACA was "arbitrary, capricious, an abuse of discretion otherwise not in accordance with law, 5 U.S.C. § 706(2)(A), and "without observance of procedure required by law, *id.* § 706(2)(D).

105. Defendants' establishment and utilization of Project Meridian is "final agency action for which there is no other adequate remedy in a court," *id.* § 704, and Plaintiffs are "entitled to judicial review" of those FACA violations under the APA, *id.* § 702.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

(1) hold unlawful, vacate and set aside the Secretary Hegseth's September 30, 2026, memorandum commissioning Project Meridian: The Future of Warfare and any other order or directive to establish it;

(2) hold unlawful, vacate, and set aside all decisions attendant to Project Meridian's creation, including, but not limited to, Secretary Hegseth's September 30 Memorandum and the appointments of individual committee members and alternate members;

(3) declare that Defendants' establishment, operation, and utilization of Project Meridian is contrary to the APA, FACA, and FACA's implementing regulations;

(4) enter a preliminary and permanent injunction requiring Defendants to ensure that the records of Project Meridian are preserved and made available for public access as required by law;

(5) enter a preliminary and permanent injunction requiring Defendants to forbid Project Meridian and any of its subdivisions from meeting, advising federal agencies, or otherwise conducting committee or subcommittee business unless and until it becomes compliant with FACA;

(6) enter a preliminary and permanent injunction prohibiting Defendants from relying on any recommendations or advice from Project Meridian or its members based on work conducted while it is not in compliance with FACA;

(7) order Defendants to immediately release to Plaintiffs and the public all records made available to or prepared for or by Project Meridian or its subdivisions, and to provide a *Vaughn* index for any material withheld from such release;

(8) award Plaintiffs their costs, attorneys' fees, and other disbursements for this action; and

(9) grant such other relief as the Court may deem just and proper.

Date: November 2, 2026

Respectfully submitted,

/s/ *Jonathan Maier*
Jonathan Maier (D.C. Bar No. 1013857)
Stephen J. Buckingham (D.C. Bar No. 1562756)
Nikhel S. Sus (D.C. Bar No. 1017937)
Haley Y. Florsheim (D.C. Bar No. 90041575)*
CITIZENS FOR RESPONSIBILITY AND
ETHICS IN WASHINGTON
P.O. Box 14596
Washington, DC 20044
(202) 408-5565
jmaier@citizensforethics.org
sbuckingham@citizensforethics.org
nsus@citizensforethics.org
hflorsheim@citizensforethics.org

Lauren Bateman (D.C. Bar No. 1047285)
Nandan Joshi (D.C. Bar No. 456750)
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street NW
Washington, DC 20009
(202) 588-1000
lbateman@citizen.org
njoshi@citizen.org

*Pro Hac Vice *motion forthcoming*

*Counsel for Plaintiffs*